JOHNSON, Judge.
The plaintiff, Edwin Leo Diebel, sued to recover his own expenses and damages for his minor daughter, Ellen A. Diebel, who' was injured when the car the daughter was driving was in collision with an automobile owned and driven by defendant, Dr. Nelson A. Cox, on the night of September 16, 1966, at the intersection of South Claiborne Avenue and Eagle Street, in the City of New Orleans. Dr. Cox and his public liability insurance company, Houston Fire & Casualty Insurance Company, are made defendants and the Civil District Court after trial rendered judgment in favor of the plaintiffs and against the defendants. At the time of trial the minor, Ellen A. Diebel, had reached the age of majority and she was made a party plaintiff in her own right. Old Security Insurance Company intervened to recover $445.00 from Dr. Cox and his insurer, the amount paid by the intervenor for the damages to the automobile of Edwin L. Diebel, under his collision insurance policy, less the deductible and salvage amounts. The judgment includes this item in favor of inter-venor. The defendants have appealed.
The facts in this case revealed by the pleadings and the evidence are that on the night in question Ellen A. Diebel left her place of employment, located several blocks upriver from Eagle Street, about 9:00 o’clock. She drove down Claiborne toward Carrollton Avenue to Eagle Street when she turned left to cross Claiborne Avenue. At that location the two sides of Claiborne Avenue are divided by a large canal and a neutral ground between the canal and the lake side of the avenue. At Eagle Street there is a bridge across the canal. Miss Diebel drove over that bridge and stopped at the end of it to look to her right but there was some grass obstruction and she could not see very well. She drove about another car length to the edge of the left lane of Claiborne Avenue and stopped again. Looking to her right she saw the headlights of automobiles a block away at Leonidas Street at a traffic light but she did not determine whether they were moving or stopped. She intended to cross the lake side lanes of Claiborne Avenue and continue on Eagle Street. She determined *635 that there was no automobile between her and the lights at the next block and decided that she had ample time in which to cross the two travel lanes of Claiborne Avenue and the parking lane. After she crossed the first lane next to the neutral ground and when the front of her automobile had crossed the right travel lane and was entering the parking lane she heard the squeaking of brakes on the pavement and saw the Dr. Cox cá'r bearing down upon her. The Cox automobile struck midway the right side of the Diebel car pushing the Diebel car across the parking lane on to the sidewalk and against a cleaning establishment building.
Dr. Cox and members of his family had been dining at Maylie’s Restaurant. Mrs. Cox was ill in Ochsner Foundation Hospital and the doctor had made arrangements to be notified in the event of any change in her condition. While at dinner he received a call from the hospital and he and the family left the restaurant immediately to go to the hospital and they were traveling up Claiborne Avenue when this accident happened. After the wreck Dr. Cox called the hospital on the telephone and learned that in the meantime his wife had passed away. Dr. Cox denied driving at an excessive rate of speed. The trial court said in his reasons for judgment that he was not impressed by the testimony of Dr. Cox and the witnesses in his car and we gain the same impression that Dr. Cox was driving at a high rate of speed. His son, a passenger in the car, had warned the doctor not to speed and the testimony of the two city policemen who investigated the wreck showed that the Cox automobile left skid marks of 118 feet before it hit the Diebel car. Taking into consideration the reaction time that must expire before the application of the brakes it is reasonable to believe that the Cox automobile must have been one of the cars Miss Diebel saw a block away when she commenced the crossing of that side of Claiborne Avenue. Therefore, Miss Diebel was undoubtedly correct in sizing up the situation that she would have time in which to cross the two traffic lanes without mishap, assuming, of course, that the approaching cars would travel at a lawful speed. It is beyond question that the Cox automobile was traveling at a high rate of speed to cover that distance and to inflict the amount of damage on the Diebel automobile as shown by the photograph in the record after skidding on dry pavement 118 feet.
It is also definite that Dr. Cox was traveling in the right traffic lane of Claiborne Avenue. The two city policemen found the skid marks along the middle of that lane and the debris thrown on the street by the impact was in that lane. The defense offered two witnesses who stated they were in a car in the right lane when Dr. Cox was traveling in the left lane next to the neutral ground curb of Claiborne Avenue. The trial court expressed his disbelief of the testimony of those witnesses and in that we agree. Therefore, we hold that the trial court was correct in his appraisal of the testimony, in the conclusions which he reached and in the judgment which he rendered.
Miss Diebel was not seriously injured but she did have a number of lacerations and bruises. Immediately after the accident she went to Hotel Dieu where the doctor debrided the wounds and dressed them. She had a cut on the lip and a one inch deep laceration on the left knee both of which required sutures. She had a bruise on her head but that was cured with the application of mercurochrome. In a day or two after the accident she went to Dr. Nix who treated her wounds. The laceration of the knee required a plaster cast on that part of the leg to the middle of the thigh. When the cast was removed a metal brace was used. She made ten visits to Dr. Nix and as she was still complaining of difficulty with her knee in November he sent her to Dr. Accardo, an orthopedic surgeon. Dr. Accardo examined her on November 11, 1966. He said she walked with normal gait favoring nei *636 ther limb. The knee showed a scar over the anterior lateral portion at the level of the patella. He said the wound was well healed, was not tender, and there was no adhesion to the deeper structures. The doctor found no evidence of injury to the maniscus or to the ligaments. She had full range of motion and his opinion at that time was that she had completely recovered from the injuries. He could find no orthopedic justification for her complaints of pain at that time. • The trial court awarded $1,450.00 for her injuries and loss of wages.
For these reasons the judgment of the trial court is affirmed with costs to be paid by defendants-appellees.
Affirmed.